IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOUGLAS L. HOPPER,

      Plaintiff,                         No. CIV S-09-2563 KJM GGH P

    vs.

MIKE MCDONALD, et al.,

      Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), filed on September 23, 2010, to which plaintiff filed an opposition, after which defendants filed a reply.

Plaintiff's Allegations

        Although file-stamped September 14, 2009, by application of the mailbox rule, this action was originally filed on August 27, 2009.[1] Following dismissal with leave to amend,

---

[1] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988)(pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009), holding that "the Houston mailbox rule applies to §

1

plaintiff filed his first amended complaint on January 15, 2010, and this action proceeds against defendants R.K. Wong; D.K. Downs; Uriel Gamboa; Daniel Romero; Dan Hunter; M. Muniz; Danna; C.A. Collins; N.Grannis; T. Kots; T. Robertson; Matthew Cate. Amended Complaint (AC), pp. 3-5.  Eight of the twelve defendants, Warden Wong; Associate Warden Downs; Correctional Officer (C/O) Gamboa; C/O Romero; C/O Hunter; C/O Muniz; Correctional Sergeant Danna; and Appeals Coordinator Collins, were employed at California State Prison-Lancaster (CSP-LAC). Id., at 3-4. Defendant Grannis was Chief of Inmate Appeals; defendants Kots and Robertson are employed at High Desert State Prison (HDSP). Id., at 4-5. Defendant Cate is Secretary of the California Department of Corrections and Rehabilitation (CDCR). Id., at 5.

Plaintiff sets forth a long and torturous route by which he claims to have been wrongfully deprived of his legal property by CSP-Lac officials but which he has been unable to rectify through his transfers to Pleasant Valley State Prison (PVSP) to California Correctional Institution (CCI) in Tehachapi or to High Desert State Prison (HDSP). Plaintiff, currently housed at HDSP, is serving a 220-year-to-life sentence. AC, p. 3. On December 19, 2005, defendant Correctional (Floor) Officer (C/O) Hunter advised plaintiff and his cellmate at CSP-Lac that they were being moved to administrative segregation (ad seg) for reasons involving an investigation. AC, pp. 5-6. Defendant Hunter ordered plaintiff and his cellmate to pack their legal materials separately from other personal property, which each did. Id., at 6.

When plaintiff was being escorted to ad-seg, he was ordered to only bring his legal material; plaintiff attempted to take two large plastic trash bags containing transcript volumes, crime scene photos, police reports, legal research and other legal material he was planning to make use of in two petitions for writs of habeas corpus in federal court: SA-cv-06-310-AHS and SA-cv-06-768-AHS. AC, pp. 6-7.  The federal district court for the

1983 complaints filed by *pro se* prisoners").

Central District of California ultimately dismissed both of plaintiff's federal habeas petitions with prejudice. AC, p. 6-7 & Exhibits (Exs.) at pp. 72 & 75. SA-cv-06-310-AHS was dismissed with prejudice on April 23, 2007, and SA-cv-06-768-AHS was dismissed with prejudice on March 20, 2008.

Once defendant Hunter saw how much legal material plaintiff was attempting to transport, he told plaintiff that he could not take all of the legal material because plaintiff would be handcuffed behind his back and would not be able to carry it. AC, p. 7. Plaintiff asked to use a nearby empty laundry cart, often used for moving inmate property, but was refused by defendant Hunter who stated that he did not wish to push the cart all the way there and back again. Id. After his transfer to ad seg, plaintiff on December 19, 2005, filed a request for his legal materials and did not receive a response for two months. Id., at 8. He submitted four additional requests to defendant C/O Muniz without a timely response and then submitted a 602 appeal on January 19, 2006, which was screened out by defendant Appeals Coordinator Collins on February 6, 2006, as being untimely. Id. Plaintiff then submitted a 602 appeal on Feb. 12, 2006, to defendant property officer Muniz without a timely response and on March 26, 2006, submitted it again to defendant Collins, which was screened out this time because plaintiff was falsely alleged to have failed to sign the form. Id., at 8-9. Plaintiff re-submitted the appeal to Collins pointing out that it was signed, but never received a response. Id., at 9.

Around mid-April of 2006, plaintiff was taken to be interviewed by defendant C/O's Gamboa and Romero about his attempt to escape from CSP-Lac. AC, p. 9. During the interview, defendants Gamboa and Romero offered to return plaintiff's legal materials if he told them what they needed to know about the escape attempt, i.e., how plaintiff did it, who was involved and how he obtained the material with which to do it; otherwise the legal material would "disappear." Id. Plaintiff refused to assist defendants Gamboa and Romero with the attempted escape plot, after which defendant Romero told plaintiff he would be "sorry" for having made that choice. Id., at 10. Defendants Gamboa and Romero then presented plaintiff

with two boxes of his personal property, telling plaintiff that he could retrieve all of his "legal crap, and maybe once [plaintiff saw] what's there, or what's not there," he would change his mind about cooperating. Id. Plaintiff discovered that none of his legal material was in the boxes, and defendant Gamboa then asked if plaintiff wanted to talk to them, clearly implying that they had removed his legal material to show their power to get him to talk, but plaintiff still refused to cooperate. Id., at 10-11. Defendant Romero then told plaintiff he could have it his way, but would never see his legal materials again. Id., at 11.

In May, 2006, plaintiff filed a 42 U.S.C. § 1983 civil rights complaint in the Central District, 06-559 AHS (PJW)), after receiving no responses to his numerous inmate requests about his legal property. AC, p. 11. (The court takes judicial notice that this complaint, 06-559 AHS (PJW), was dismissed without prejudice in September 2007 (for failure to exhaust administrative remedies)).[2] On June 2, 2006, defendant CSP-Lac Correctional Sergeant Danna advised plaintiff to re-submit his 602 inmate appeal requesting his legal materials, explaining briefly his efforts to obtain his legal material, but strongly urging plaintiff to leave out his encounter with defendants Gamboa and Romero, promising that if plaintiff followed those guidelines, plaintiff's appeal would be granted and his legal materials returned; plaintiff did so on June 2, 2006, and defendant Danna granted the appeal (at the informal level) that day. Id., at 12 & Ex., p. 51.

On June 15, 2006, defendant Associate Warden Downs assured plaintiff defendant Danna was in the process of replacing the missing documents. AC, p. 12. Plaintiff received a letter from defendant Warden Wong in October 2006, regarding plaintiff's sister's complaint about the misconduct of defendants Romero and Gamboa and plaintiff was interviewed by the Investigative Services Unit, but nothing was done about restoring plaintiff's legal property. Id.,

---

[2] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

4

at 13. Plaintiff was transferred to Pleasant Valley State Prison (PVSP) in mid-October, 2006, without having legal materials restored. Id. Plaintiff received notification, on or around October 31, 2006, by the Victim Compensation and Government Claims Board with respect to his claim regarding lost or destroyed legal materials that the issue would be better addressed through the court system. Id., at 13, 33.

Plaintiff was stone-walled in his efforts at PVSP to receive his legal material from January through May of 2007. AC, p. 14. On May 1, 2007, he was separated from all of his property when he was placed in ad seg at PVSP; he was transferred from PVSP to California Correctional Institution (CCI) around September 17, 2007, where his personal property was illegally detained and destroyed by a non-party named R. Cruz, against whom plaintiff is proceeding "independently." AC, pp. 14-15. On August 21, 2008, plaintiff sent a certified letter to defendant Warden Wong at CSP-Lac containing, inter alia, the granted appeal, to which he received no response, after which he sent a letter to defendant Grannis on November 2, 2008. AC, pp. 15-16. Defendant Grannis in a February 2008 response told plaintiff to submit a new appeal to the CCI appeals department, which plaintiff did on Feb. 7, 2008. Id., at 16. Before he received a response, he was transferred from CCI to High Desert State Prison (HDSP) on March 3, 2009. Id. Defendant Kots to whom plaintiff explained the situation told plaintiff he would hand carry the new 602 appeal and supporting documents to defendant Robertson. AC, pp. 16-17. On April 17, 2009, plaintiff was told that the new appeal had been routed to CCI; on May 7, 2009, the HDSP appeals coordinator told plaintiff to contact CSP-Lac officials which plaintiff hand done unsuccessfully "100 times over" with no success. Id. Plaintiff was again told on May 13, 2009, that this was a CSP-Lac issue and not one for HDSP. Plaintiff continued to make efforts to process his appeal through HDSP and was told again to contact CSP-Lac. Id., at 17-18. When plaintiff showed defendant Kots the letter from defendant Grannis instructing plaintiff to process an appeal through HDSP, he was told the appeal was processed to CSP-Lac. Id., at 19.

When plaintiff complained to defendant Grannis, she then contributed to

thwarting his efforts by indicating CSP-Lac had no record of the appeal granted at the informal level by defendant Danna, even though plaintiff had sent her a copy of the granted appeal. AC, pp. 19, 69. Plaintiff wrote to defendant Cate with "neg[a]tive results." Id., at 20. Plaintiff alleges that his lack of access to his legal property denied him his First Amendment right to access the courts, contributing to the dismissals of his federal habeas petitions and denial of certificates of appealability and continues to prevent him from seeking to re-open those cases. Id., at 21-25, 28-29. He alleges that his due process and equal protection rights have been violated and that he has been subjected to cruel and unusual punishment.³ Id. Plaintiff seeks money damages. Id., at 30. He also appears to believe a favorable outcome in this action could revive his federal habeas petitions. Id.

Motion to Dismiss

    Defendants move for dismissal, under Fed. R. Civ. P. 12(b)(6), on the following grounds: 1) plaintiff failed to state a First Amendment access to the courts claim; 2) plaintiff failed to state a due process claim for the loss of his personal property; and 3) plaintiff's allegations that defendants failed to follow the prison grievance procedure properly are insufficient to state a constitutional claim. MTD (docket # 23), p. 1.

    *Legal Standard for Rule 12(b)(6) Motion to Dismiss*

    In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

---

³ Plaintiff's claims regarding equal protection and cruel and unusual punishment are without an apposite and adequate supporting factual framework and should be summarily dismissed.

and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Request for Judicial Notice*

1  Defendants request, in support of their motion to dismiss, that the court take
2  judicial notice of several court documents, including the report and recommendations for each of
3  plaintiff's two Central District habeas petitions (case no. SA CV 06-310 AHS (PJW), Hopper v.
4  Ayers and case no. SA CV 06-768 AHS (PJW), Hopper v. Wong), and the orders accepting the
5  reports and adopting the recommendations, pursuant to Fed. R. Evid. 201.  (It is unclear to this
6  court why the second petition was not deemed successive).   A court may take judicial notice of
7  court records.  See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v.
8  Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th
9  Cir. 1980).  Pursuant to Fed. R. Evid. 201(b), the existence and substance of each of the
10 documents is "capable of  accurate and ready determination by resort to sources whose accuracy
11 cannot reasonably be questioned."

> Judicially noticed facts are one of two well-settled exceptions to
> the rule that courts may not consider submissions extrinsic to the
> complaint without properly converting the motion to a Rule 56
> motion for summary judgment.  See *Lee v. City of Los Angeles*,
> 250 F.3d 668, 688-89 (9th Cir.2001). In admitting the documents,
> however, courts must remain diligently within the contours of facts
> properly taken on judicial notice, namely facts that are not "subject
> to reasonable dispute." Id. at 689 (citing Fed. R. of Evi. 201(b)).

17 Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co., et al., 393 F.
18 Supp.2d 972, 978 (N.D. Cal. 2005); Mullis v. United States Bank, 828 F.2d 1385, 1388 (9th
19 Cir.1987)(court may consider facts subject to judicial notice on a 12(b)(6) motion to dismiss).

> Under FRCP 12(b)(6), the Court may consider matters that are
> subject to judicial notice. *Mullis v. United States Bankruptcy*, 828
> F.2d 1385, 1388 (9th Cir.1987). The Court may take judicial notice
> "of the records of state agencies and other undisputed matters of
> public record" without transforming the motions to dismiss into
> motions for summary judgment. *Disabled Rights Action Comm. v.
> Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir.2004).  The
> Court may also examine documents referred to in the complaint,
> although not attached thereto, without transforming the motion to
> dismiss into a motion for summary judgment.  See *Knievel v.
> ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005).

26 Headwaters Construction Company v. National City Mortgage Co., 720 F. Supp.2d 1182, (D.

Idaho 2010).

> "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, F.3d 903, 907 (9th Cir.2003) (citations omitted). However, the court may consider certain materials without converting the motion to dismiss into a motion for summary judgment. *Id*. at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.2000); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994)). Such materials include documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *Id.*

Lloyd v. Powell, 2010 WL 2560652 *1 (W.D. Wash. 2010).

In this instance, plaintiff places emphasis on his two dismissed federal habeas petitions within his complaint and among his exhibits attached to his amended complaint included copies of the same orders dismissing his federal court habeas petitions with prejudice; in addition, he included copies of the certificate of appealability denials for which defendants have not sought judicial notice. Therefore, he has, at a minimum, incorporated by reference the underlying reports and recommendations and orders undergirding the petition dismissals. Nor does plaintiff raise any objection to defendants' judicial notice request. Defendants' request for judicial notice of the court documents is granted.

Argument & Analysis

First Amendment Denial of Access to the Courts Claim

*Legal Standard*

Prisoners have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S. Ct. 2174, 2177 (1996). This right is essentially limited to direct criminal appeals, habeas petitions and civil rights actions pursuant to 42 U.S.C. § 1983. Id., at 354, 116 S. Ct. at 2181-82. To establish a violation of his constitutional right to court access, plaintiff must show an "actual injury." Id., at 349, 116 S. Ct. at 2179. The high court held that before a denial of access to the courts claim can go forward, an inmate must

"demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id., at 351-53, 355, 116 S. Ct. 2180-81.

As defendants contend, the Supreme Court has recognized two categories of right-of-court-access claims: 1) those based on claims of systemic official action that impede a plaintiff from filing a suit at the present time, i.e., forward-looking claims; and 2) those based on claims that seek relief for cases that cannot be tried now, no matter what future official action might take place, i.e., backward-looking claims. MTD, p. 6, citing Christopher v. Harbury, 536 U.S. 403, 412-14, 122 S. Ct. 2179 (2002).

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.

Id., at 414-15, 122 S. Ct. at 2186.

In order to proceed on a backward-looking denial of court access claim like the instant one, plaintiff must identify 1) a "nonfrivolous," "arguable" underlying claim; 2) "the official acts frustrating the litigation"; and 3) "a remedy that may be awarded as recompense but not otherwise available" in a future lawsuit. Christopher v. Harbury, 536 U.S. at 415, 122 S. Ct. at 2187.

> [O]ur cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Id., 536 U.S. at 415, 122 S. Ct. at 2186-87.

*Discussion*

1          Defendants contend that plaintiff does not set forth his underlying claim sufficient
2   to meet his pleading burden under Christopher. MTD, pp. 6-7.  Arguing that the access to the
3   courts claim should be dismissed on that basis alone, they further aver that court records of the
4   previously dismissed federal habeas petitions, of which this court has taken judicial notice,
5   demonstrate that the dismissals occurred for reasons wholly unrelated to plaintiff's inability to
6   access to his legal property.  MTD, at 7.
7          Plaintiff counters that he is unable to present such a claim because his inability to
8   access and review his records foreclosed him from the requisite information to frame and support
9   his claims in his prior habeas petitions.  Opposition (Opp.), p. 5.  Plaintiff argues that he faced
10  obstacles with regard to alternative routes to obtaining his missing legal property inasmuch as his
11  indigence precluded him from being able to purchase copies of transcripts and minute orders
12  from the court, and his appellate attorneys, having already provided him with one copy of his
13  records, were not under an obligation to produce a second copy absent reimbursement.  Id., at 5-
14  6.  Plaintiff maintains the he can no more argue the merits of his claims within this complaint
15  without his legal property than he was able to in his prior federal habeas petitions which he was
16  compelled to file under the AEDPA time constraints.  Id.  Plaintiff attempts to raise a new
17  access-to-the-court issue by stating that when his legal property was taken, he was in the process
18  of raising an ineffective assistance of counsel claim along with other claims not identified which
19  he intended to file in state court habeas petition, but the removal of his legal materials deprived
20  him of his ability to do so.  Id., at 7.  He also contends that defendants are wrong that any
21  favorable ruling in this case would not recompense him inasmuch as he believes he could return
22  to federal court and re-open his petitions with an argument for tolling on the basis that he finally
23  has the long-sought court and police records of his case.  Id., at 6.
24         In reply, defendants return to their contention that plaintiff never pled the merits
25  of his underlying complaint and never identified the legal claims he was prevented from litigating
26  as a result of not having his legal material.  Reply, p. 2.  Defendants correctly observe that the

11

federal petitions (one of which was successive) were denied on the merits and not on the basis that petitioner was not able to bring a nonfrivolous claim to the court's attention; nor did plaintiff allege facts demonstrating what arguments he was prevented from bringing that might have preserved his federal habeas petition. Id. Defendants observe the claim in his opposition of the deprivation of his right of court access by his alleged inability to draft a state petition raising an ineffective assistance of counsel claim as a newly raised claim, and assuming the court will treat it as a de facto amendment or supplement to the [amended] complaint, contend that plaintiff nevertheless still fails to allege facts showing actual injury arising therefrom. Id. Defendants point out that plaintiff does not allege that he even made an attempt to file a prima facie claim in state court or that any such claim was rejected for lack of evidence. Id., at 3.

Plaintiff's argument that he was unable to frame meritorious claims in his dismissed federal habeas petitions because of his being deprived of his legal property, wherein the supporting evidence for any such claims rested, is belied by the rulings on the merits plaintiff received on his petitions. Further, plaintiff fails to allege within his amended complaint that he made any effort to apprise the court considering his federal habeas petitions that he was being deprived of access to legal property he needed to fully frame and support his grounds for relief. He fails to allege what non-frivolous claims he would have raised in the instant amended complaint that he failed to raise, much less any substantive basis for such claims, from which he was stymied by the deprivation of his property. His late-raised bare contention that he was intending to proceed on a state court habeas petition alleging ineffective assistance claim, without more, is not adequate to show that there was any basis for such a claim. In addition, plaintiff makes no showing whatever of how a favorable ruling in this action could result in his ability to proceed on his previously dismissed federal habeas petition(s).

There can be no doubt that plaintiff has adequately alleged the official acts frustrating his litigation; indeed, those claims comprise the heart of his allegations. However, it is equally true that plaintiff has failed to meet his burden, as set forth in Christopher v. Harbury.

536 U.S. at 415, 122 S. Ct. at 2187, to provide the underpinning to his claims regarding dismissal of his prior habeas petitions. It is simply not enough to allege that he was deprived of access to his legal material records; he must set forth how he was precluded or thwarted in his efforts to present a legally or factually arguable claim to the courts by identifying any such claim itself. Thus, by failing, at a minimum, to identify those claims he believes could have been strengthened by access to his legal property, he has not framed a denial of access to the courts claim and defendants' motion should be granted on this ground.

### Due Process Claim for Loss of Personal Property

*Legal Standard*

The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194 (1984); Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989) ("[i]n Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908 (1981),[4] the Court held that where a deprivation of property resulted from the unpredictable negligent acts of state agents, the availability of an adequate state postdeprivation remedy satisfied the requirement of due process.") Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). The California Legislature has provided a remedy for tort claims against public officials in the California Government Code, §§ 900, et seq.

*Discussion*

---

[4] Overruled on another ground by Daniels v. Williams, 474 U.S. 327, 330-331, 106 S. Ct. 662, 664 (1986).

1   In the instant case, plaintiff has not alleged facts which suggest that the
2   deprivation was authorized.  Although plaintiff attempts to alter this position within his
3   opposition, defendants are correct that plaintiff's allegations against defendants Gamboa and
4   Romero clearly set forth that plaintiff is alleging that they acted in both an intentional and an
5   unauthorized manner.  MTD, pp. 8-9.  In fact, plaintiff, at least implicitly, implicates these
6   defendants in a form of extortion, or at least malicious behavior, by his description of how they
7   were purportedly attempting to extract information from him (as to plaintiff's own alleged
8   criminal action in an apparent attempted prison escape) by taking his legal property.  With regard
9   to the outset of the legal property deprivation, it is at a minimum implicit that plaintiff alleges
10  that the original loss occurred because defendant Hunter did not want to be bothered to make the
11  extra effort to deliver the large amount of material to plaintiff, while plaintiff makes the case that
12  his access to the property in ad seg was authorized (thus, by inference, the denial of access by
13  defendant Hunter was intentional, arbitrary and unauthorized).  Plaintiff's reference in his
14  opposition to the letter from the Victim Compensation and Government Claims Board informing
15  him that he would be best served by proceeding in court did not foreclose him from so
16  proceeding in state court, notwithstanding that "he has lost all faith in the state judicial system"
17  due to the "heavy influence" therein of the "C.D.C.R. guards union."  Opp., p. 9.  However,
18  plaintiff does not raise a federal constitutional due process claim with regard to the deprivation of
19  his legal property thereby, and defendants' motion to dismiss on this ground should be granted.

20              Due Process Claim for Grievance Procedure Failure
21              *Legal Standard*
22              Prisoners do not have a "separate constitutional entitlement to a specific prison
23  grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.
24  Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the non-existence of, or the failure of prison
25  officials to properly implement, an administrative appeals process within the prison system does
26  not raise constitutional concerns.  Mann v. Adams, 855 F.2d at 640.  See also, Buckley v.

Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991). Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). Specifically, a failure to process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[5]

*Discussion*

Defendants contend that plaintiff does not show how defendants' failure to ensure proper functioning of the prison grievance system affected his sentence in an unexpected manner or how any such failure imposed a significant or atypical hardship, in the context of his ordinary conditions of confinement, upon him. MTD, p. 10. Plaintiff counters with the argument that he is facing a severe restraint on his freedom by virtue of his 220-year-to-life sentence. Opp., p. 10. He maintains that he does have a constitutional right to a prison grievance system under the PLRA, which mandates administrative exhaustion of prisoner claims prior to bringing a civil rights action.[6] Id., at 9-10, citing Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006)

---

[5] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington[ v. Harper], 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

[6] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

(exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules).

However, as set forth above (see Ramirez v. Galaza, 334 F.3d at 860), and as argued by defendants, plaintiff has no constitutional entitlement to a particular prison grievance procedure. Plaintiff argues that the failure of the prison grievance procedure implicated his liberty interest in challenging his conviction and sentence by way of a habeas petition when his legal materials were either lost or destroyed. Opp., p. 10. But plaintiff cannot blame his long sentence upon the prison grievance procedure, nor does not he implicate a liberty interest protected by the federal due process clause by fixing blame upon the grievance procedure or those prison officials involved in it for his long and unsuccessful effort within that process to obtain access to his legal property when he has insufficiently framed a denial of access to the courts claim with respect to his previously dismissed habeas petitions. The motion should be granted as to this claim.

### No Further Leave to Amend

"Liberality in granting a plaintiff leave to amend 'is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile.'" Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 799 (9th Cir. 2001), quoting Bowles v. Reade, 198 F.3d 752, 757 (9th Cir. 1999). "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000). See also, Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1106 (9th Cir. 2004), citing Doe v. United States, 58 F.3d 494, 497(9th Cir. 1995) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts."). "[A] district court retains its discretion over the terms of a dismissal for failure to state a claim, including whether to make the dismissal with or without leave to

amend." Lopez v. Smith, 203 F.3d at 1124. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Metzler Inv. GMBH v. Corinthian Colleges, Inc. 540 F.3d 1049, 1072 (9th Cir. 2008), quoting In re Read-Rite Corp., 335 F.3d 843, 845 (9th Cir. 2003).

Plaintiff's original complaint was dismissed with leave to amend. See Order, filed on Nov. 2, 2009 (docket # 7). Plaintiff's subsequent amended complaint has not withstood defendants' motion to dismiss. At this point, the court cannot discern how a further opportunity to amend could cure the defects of the amended complaint. Finding further leave to amend to be futile, the undersigned will recommend dismissal of this action.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss the amended complaint, filed on September 23, 2010 (docket # 23), be granted and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 16, 2011

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
hopp2563.mtd